UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NATIONAL RAILROAD PASSENGER )
CORPORATION, )
Plaintiff, )   03 Civ.12440-DPW
)
v. )
)
5,103 SQUARE FEET OF LAND, )
LOCATED AT 40-46 HARVARD )
STREET, SITUATED IN WESTWOOD, )
MASSACHUSETTS; MORTIMER B. )
ZUCKERMAN AND EDWARD H. LINDE,)
TRUSTEES OF THE 40-46 HARVARD )
STREET TRUST, OWNERS; AND )
UNKNOWN OTHERS, )
)
Defendants. )

## JOINT PRETRIAL MEMORANDUM

Plaintiff National Railroad Passenger Corporation ("Amtrak") and Defendants Mortimer B. Zuckerman and Edward H. Linde, Trustees of the 40-46 Harvard Street Trust (the "Trustees"), jointly submit the following pretrial memorandum pursuant to Rule 16(a) of the Federal Rules of Civil Procedure, Local Rule 16.5(D), and the Court's April 7, 2004 Order.

**I.   TRIAL COUNSEL**

**A.   Counsel for Amtrak**

Eric W. Wodlinger
Johanna W. Schneider
Choate, Hall & Stewart
Exchange Place
53 State Street
Boston, MA 02109
(617) 248-5000

**B.     Counsel for the Trustees**

Neal C. Tully
Masterman, Culbert & Tully, LLP
One Lewis Wharf
Boston, MA 02110
(617) 227-8010

## II.    TRIAL TYPE

Trial will be by jury.

## III.   CONCISE SUMMARY OF THE EVIDENCE THAT WILL BE OFFERED

### A. Evidence That Will Be Offered By Amtrak

Amtrak will offer evidence to show that its taking of a 5,103 square foot permanent easement in the Trustees' property at 40-46 Harvard Street in Westwood, Massachusetts was for the purpose of improving intercity rail transportation between New York and Boston. The evidence will show that the easement was designed to restore certain freight service that was lost when, as part of the Northeast High Speed Rail Improvement Project, Amtrak constructed a new station at Route 128 near Westwood. The evidence will further show that as mitigation for the lost freight track, Amtrak committed to fund the construction of an additional freight track extension in the nearby Westwood Industrial Park.

Amtrak will present evidence showing that the easement in property taken (the "Subject Property") is an irregularly shaped 5,103 square foot parcel of undevelopable land, which comprises 1.27% of the 9.2 acre parcel owned by the Trustees. The parcel is located in an industrial park and is improved with an approximately 168,000 square foot warehouse and office building. Amtrak will offer evidence to show that the highest and best use of the Subject Property is accessory to the existing structure as an area for building setbacks required by zoning and as a space for desirable railroad freight service to the existing industrial park building and

other buildings nearby. Amtrak's evidence will also show that the property has had a railroad spur and siding on it from its creation and from the inception of the industrial park and that, by design, it has always been subject to permanent railroad spur and lead easements. Amtrak will also present evidence to show that the new siding easement will not interfere with rail service on the spur track serving the 40 Harvard Street building and that, in fact, the easement confers real benefits on the Trustees and their tenants by restoring freight capacity to railroad tracks adjacent to the existing buildings.

As set forth in the December 3, 2003 Complaint in Condemnation, Amtrak has estimated that the fair market value of the Subject Property is $51,000; it will introduce evidence at trial, including testimony regarding comparable sales and industrial land values, to prove that this amount is correct and that the Trustees are not entitled to any additional compensation for the property taken.

### B. Evidence That Will Be Offered By The Trustees

The Trustees have not received the final appraisal report from its expert appraiser, but based on the preliminary information from the appraiser and the other potential witnesses identified below, it is the Trustee's position that the highest and best use of the property was for rehabilitation and conversion to an office, research and development, light manufacturing, flex space building consistent with planning objectives and initiatives of the Town of Westwood and consistent with the type of conversion that had occurred in approximately one-third of the University Avenue industrial park and was proposed for additional buildings within the industrial park. It is the Trustee's further position that the taking of a permanent rail easement for the purpose of storing rail cars immediately adjacent to the building will significantly diminish the desirability of the site for such uses and will, concomitantly, diminish the value of the property.

The Trustee's property consists of approximately 9.2 acres of land, improved with a warehouse and office building containing approximately 169,000 square feet of space. Approximately 29,500 square feet is dedicated to office use and the balance is warehouse type space, including loading docks and bays. The property was developed as part of an industrial park built largely in the 1950's and 1960's. By the early 1990's, following the real estate recession of the late 1980's through the early 1990's, the industrial park began experiencing significant vacancies as tenants moved to more modern facilities along Route 495 and other locations. Many of the buildings, including the subject property, suffered from physical or economic obsolescence. The subject property, for example, has an office to warehouse space ratio that exceeds current requirements and truck bays that can not accommodate many models of tractor-trailers currently in use. The subject property has been at least partially vacant since the early 1990's. The Bank of Boston occupied part of the building during the mid-1990's as a printing and print distribution facility, and later Armstrong Laboratories occupied part of the building from January, 1997 to January, 2003 (23,704 square feet) and Output Technologies, Inc. occupied part of the building from October, 1995 to July, 2003 (originally 133,174 square feet and later 128,105 square feet). The building has been vacant since Armstrong and Output Technologies moved out.

The Town of Westwood, which recognizes the industrial park as its commercial and economic base, responded in 1991 to the precipitous drop in property values during the recession, by forming the Economic Development Advisory Committee with a full time Economic Director. The mission of the Committee is to work with owners and occupants of the industrial park on revitalizing and rejuvenating the park. Over the years, the Committee and the Town obtained state grants for infrastructure and roadway improvements and worked with the

MBTA to optimize MBTA investment and mitigation in connection with improvements at the commuter rail station. The ultimate goal of the Committee and the Town has been to effect the redevelopment of the park through conversion of the older, traditional warehouse and distribution uses to office, R&D, high tech or computer light manufacturing and assembly, consistent with changes in the economy. By 2002, approximately one-third of the complex had undergone some form of conversion, one-third was still subject to the traditional warehouse or manufacturing uses, and one-third was vacant. Beginning in 2002 or 2003, the Committee began a planning initiative to spur development and conversion of the industrial park. The effort culminated in the adoption of eleven zoning articles at the Spring 2003 Town Meeting to encourage rehabilitation and conversion of the industrial park. Among other changes, the Town increased the permitted height of buildings, increased the permitted density (FAR) and eliminated the requirement of special permits for many dimensional restrictions and uses.

Private owners within the industrial park, particularly Cabot, Cabot & Forbes, which owns the largest facility in the complex (the soon to be vacated GM building) and other property, have been formulating a master plan to complete the rehabilitation and conversion of the remaining buildings in accordance with the Town's planning goals. The subject property is within the area included in the current planning.

The Trustees expect to present evidence that the existence of a rail storage spur track on its property and the storage of rail cars immediately adjacent to their building will impede the ability to convert the building, will diminish the marketability of the property for office, R&D related uses, and diminish the value of the property as a whole. The existing tracks are little used and have a negligible impact on the potential uses of the property. The spur that services the subject property has not been used since Bank of Boston vacated the property in the mid 1990's

and is not likely to be used again. The spur servicing the property on the opposite side of the tracks has not been used since that building was converted to primarily office use and is unlikely to be used in the future. The through rail is sparsely used. A new rail with stored cars will have a significant adverse aesthetic impact on the property and its potential uses.

### IV.    FACTS ESTABLISHED BY THE PLEADINGS, ADMISSIONS, OR STIPULATIONS

The parties agree that the following facts have been established by the pleadings, admissions, or stipulation:

1. Amtrak is a corporation created under the provisions of the Rail Passenger Service Act, 49 U.S.C. § 24301 et seq., for the purpose of providing intercity rail passenger service.

2. On December 3, 2003, Amtrak filed with the United States District Court for the District of Massachusetts a Declaration of Taking for a permanent railroad easement over 5,103 square feet of land in Westwood, Massachusetts (the "Subject Property") owned by the Trustees (the "Taking").

3. The Trustees owned the Subject Property as part of a larger parcel shown as Lot 59 on Land Court Plan 26294R, also known as Plat 37, Lot 16 on the current tax assessor's map for the Town of Westwood.

4. The permanent railroad easement was taken subject to and with the benefit of all easements, agreements, and restrictions of record.

5. The easement taken by Amtrak reserved to the Trustees rights to (a) construct and use for railroad service to Lot 59 as shown on Land Court Plan 26294R spur tracks connecting

with tracks within this railroad easement, subject to the requirements of public authority and to the reasonable regulations of Amtrak and subject to Amtrak's specifications and the approval of Amtrak's chief engineer, which approval shall not unreasonably be withheld; (b) to cross the railroad easement described above where necessary for access between parcels on either side thereof and to streets or ways; (c) to use, construct, repair and replace for such crossings, driveways flush with any tracks, subject to the approval of Amtrak's chief engineer, which approval shall not unreasonably be withheld; and (d) to use, construct, repair and replace utility lines, tunnels and bridges over or under said railroad easement, subject to the approval of Amtrak's chief engineer, which approval shall not unreasonably be withheld.

6. The Subject Property is situated entirely within an industrial zoning district in the Town of Westwood.

7. The Trustees' property consists of an approximately 9.21 acre lot improved with a 169,000 square foot warehouse and office building.

8. The Subject Property is adjacent to at least six loading bay openings with steel doors in the warehouse's easterly side.

9. The Subject Property is adjacent to an existing railroad right-of-way held by Amtrak as well as a lead track to the MBTA's mainline.

10. Prior to the Taking, the Subject Property was undevelopable land as a discrete parcel.

11. The Taking was necessary to support Amtrak's provision of intercity rail passenger transportation service between New York and Boston.

12. As compensation for the Taking, Amtrak deposited $51,000 with the Court.

13. The Taking has not interfered with rail service on the spur track serving the 40 Harvard Street building owned by the Trustees.

## V.   CONTESTED ISSUES OF FACT

### A. Amtrak

Amtrak expects that the sole contested issue in this matter is the fair market value of the Subject Property. To date, however, the Trustees have not filed an answer to the December 3, 2003 Complaint in Condemnation, have not responded the Amtrak's June 2004 discovery requests, and have not produced an appraisal report disclosing their estimated fair market value of the Subject Property. As such, Amtrak at this time is unable to identify contested issues of fact in this case, if any.

### B. The Trustees

Although the Trustees have not received the final report from its expert appraiser and therefore have been unable to provide the information requested in discovery, or to exchange expert reports with Amtrack, the Trustees expect that the sole contested issue in this matter will be the damages incurred by the Trustees as a result of the taking made by Amtrack.

## VI.  JURISDICTIONAL QUESTIONS

### A. Amtrak
None.

### B. The Trustees
None.

## VII. QUESTIONS RAISED BY PENDING MOTIONS

There are no motions currently pending in this matter.

## VIII.   ISSUES OF LAW

### A. Amtrak

Amtrak expects that the sole contested issue in this matter is the fair market value of the Subject Property. To date, however, the Trustees have not filed an answer to the December 3, 2003 Complaint in Condemnation, have not responded to Amtrak's June 2004 discovery requests, and have not produced an appraisal report disclosing their estimated fair market value of the Subject Property. As such, Amtrak at this time is unable to identify contested issues of law in this matter, if any, particularly with respect to the Trustees' appraisal of the fair market value of the Subject Property.

### B. The Trustees

Because the Trustees have not received the final report from its expert appraiser, and therefore has been unable to provide information in discovery or to exchange expert reports with Amtrack, the Trustees are unable to identify contested issues of law, although the Trustees expect that the sole issues in this matter will relate to damages and the diminution of the fair market value of the property.

## IX.   REQUESTED AMENDMENTS TO THE PLEADINGS

### A. Amtrak
None.

### B. The Trustees
None.

## X.   ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION

### A. Amtrak

Pursuant to this Court's February 12, 2004 Notice of Scheduling Conference and Order for Joint Statement and Certifications, Amtrak on May 14, 2004 submitted to counsel for the Trustees its Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a). To date, the Trustees have not yet made similar disclosures to Amtrak. On June 11, 2004, Amtrak served on counsel for the

MCT/145244.1                            9

Trustees Interrogatories and Requests for the Production of Documents; the Trustees have not yet responded to such discovery requests. In addition, the Trustees have not yet provided to Amtrak an appraisal of the fair market value of the Subject Property. In order to prepare for trial of this matter, and, indeed, to even ascertain whether a dispute exists, it is essential that the Trustees disclose to Amtrak an appraisal of the property interest taken. Moreover, Amtrak is of the opinion that it cannot adequately prepare for trial of this matter until it receives the required disclosures and the requested discovery from the Trustees and has the opportunity to engage in additional discovery, including without limitation, depositions, in response to whatever information is ultimately provided by the Trustees.

### B. The Trustees

The Trustees will provide the expert report promptly upon its receipt and will cooperate with Amtrack in expeding of any additional required discovery. The Trustees, through counsel, recently advised Amtrack of the interest of the Town of Westwood in relocating the easement to an area that does not interfere with the Town's planning objectives. The track has not yet been constructed and the Town is interested in pursuing discussions of relocating the storage rail to Town owned property. Should the parties reach agreement on such a relocation, it would resolve the claims.

### XI. PROBABLE LENGTH OF TRIAL

The parties estimate a five (5) day trial.

### XII. WITNESSES TO BE CALLED

#### A. Amtrak's Witnesses

>John R. Wood
>Project Director – Real Estate Development
>National Railroad Passenger Corporation
>5th Floor South, 30th Street Station
>Philadelphia, PA 19104

(215) 349-1949

Mr. Wood will serve as a fact witness at trial.

Art Misiaszek, P.E.
Deputy Chief Engineer
Amtrak Engineering
101 Industrial Drive
Groton, CT 06340
(860) 446-3992

Mr. Misiaszek will serve as a fact witness at trial.

Richard J. Dennis, Sr., MAI, SRA, MRA
Casey and Dennis
6 Beacon Street
Boston, MA 02108
(617) 523-0023

Mr. Dennis is a certified general appraiser in the Commonwealth of Massachusetts with more than 35 years of appraisal experience. He has been a member of the Society of Real Estate Appraisers since 1968, and a member of the Appraisal Institute since 1987.

Mr. Dennis will offer expert testimony at trial.

Robert Daylor, P.E., P.L.S.
Daylor Consulting Group, Inc.
10 Forbes Road
Braintree, MA 02184
(781) 849-7070

Mr. Daylor is a registered professional engineer and professional land surveyor in Massachusetts, with more than thirty years of experience in the consulting engineering profession as a project manager, designer and surveyor. He holds a B.S. and an M.S. in Civil Engineering from Northeastern University and is a member of the American Consulting Engineers Council National Society of Professional Engineers. Mr. Daylor is currently the Chief Executive Officer of the Daylor Consulting Group, a firm specializing in survey, site analysis and layout, land use planning, and engineering.

Mr. Daylor will offer expert testimony at trial.

**B. The Trustees' Witnesses**

Jeffrey L. Lowenberg
Michael Cantalupa
Senior Property Manager – Development

      Boston Properties
      111 Huntington Avenue
      Boston, MA 02199-7610
      (617) 2366-3300

      The Trustees expect calling one or the other of Mr. Lowenberg and or Mr. Cantalupa as a fact witness in connection with a description, history and use of the property, efforts to market the property, and plans for the future use of the property.

      Mr. James Nicoletti
      Mr. Steven Clancy
      CB Richard Ellis-Whittier Partners
      111 Huntington Avenue
      Boston, MA 02199
      (617) 867-2340

      The Trustees anticipate calling either Mr. Nicoletti or Mr. Clancy as a fact witness in connection with marketing efforts with respect to the property and the impact of the taking and the storage rail on the marketability and use of the property.

      Mr. Michael Gillette, Town Manager
      Ms. Joyce Moss, Economic Development Offices
      Town of Westwood
      Town Hall
      580 High Street
      Westwood, MA 02090
      (781) 326-6450

      The Trustees anticipate calling either Mr. Gillette or Ms. Moss in connection with the planning initiatives and goals of the Town of Westwood, efforts undertaken to rehabilitate and revitalize the industrial park, and recent zoning changes in the Town of Westwood.

      Mr. Jay Doherty
      Cabot, Cabot & Forbes
      125 Summer Street, Suite 1800
      Boston, MA 02110
      (617) 603-4004

      Mr. Doherty will serve as a fact witness with respect to efforts at revitalizing and converting property within the park, creation of a master plan for the industrial park, and the impact of the taking on the storage rail both on redevelopment of the park as a whole and on the property.

      Mr. Webster Collins, MAI
      CB Richard Ellis-Whittier Partners
      10 High Street, Suite 1120

Boston MA 02110
(617) 912-7025

Mr. Collins is a certified general appraiser in the Commonwealth of Massachusetts with extensive appraisal experience. He holds an MAI designation. Mr. Collins is expected to testify as an expert with respect to his opinion of the highest and best use of the property before and after the taking and with respect to the damages incurred as a result of the taking and the project for which the taking was made.

## XIII. PROPOSED EXHIBITS

### A. Amtrak's Proposed Exhibits

1. Deed from 128 Westwood Industrial Trust to JM Huber Corporation of Lot 37 shown on Plan 26294H, dated April 16, 1965. (Sh. 33, Doc. 263,363)

2. Easement from JM Huber Corporation to the trustees of the 128 Westwood Industrial Trust, dated December 22, 1965. (Sh. 17, Document 271792)

3. Deed from 128 Westwood Industrial Trust to General Aniline and Film Corp. of Lots 28 and 29 on Plans 26294D and 26294F, dated October 9, 1964. (Sh. 28, Doc. 258597)

4. Deed from 128 Westwood Industrial Trust to Samuel Kurr of Lots 26 and 27 on Plan 26294D and F, dated October 15, 1964. (Sh. 29, Doc. 258689)

5. Deed from 128 Westwood Industrial Trust to General Motors Corporation of Lots 9, 10 and 31 as shown on Plan 26295A, dated December 10, 1964. ( Sh. 30, Doc. 260047)

6. Deed from 128 Westwood Industrial Trust to DH Overmyer Warehouse Company of Lots 22, 23 and 24 shown on Plan 26294D, dated December 21, 1964. (Sh. 31, Doc. 260694)

7. Deed from 128 Westwood Industrial Trust to American Cyanamid Company of Lot 20 and Lot 21 on Plan 26294D, dated May 11, 1965. (Sh. 34, Doc. 263595)

8. Deed from 128 Westwood Industrial Trust to DH Overmyer Warehouse Company of Lot 33 on Plan 26294H, dated November 24, 1965. (Sh. 36, Doc. 270093)

9. Deed from 128 Westwood Industrial Trust to A. William Whitney of Lot 40 on Plan 26294J, dated January 28, 1966. (Sh. 37, Doc. 271571)

10. Deed from 128 Westwood Industrial Trust to General Electric Company of Lots 43, 44 and 45 on Plan 26294L, dated January 18, 1966. (Sh. 43, Doc. 271844)

11. Deed from 128 Westwood Industrial Trust to Westwood Investment Trust of Lot 41 as shown on Plan 26294K, dated January 10, 1966. (Sh. 38, Doc. 271794)

12. Final Easement Plan of Land in Westwood, Massachusetts prepared for CSX Transportation, dated June 14, 1999 (revised June 27, 2000).

13. Town of Westwood Board of Appeals Special Permit Decision and Record of Proceedings Pursuant to G.L. c. 40A, §18, dated June 22, 1966.

14. Town of Westwood Board of Appeals Record of Proceedings, dated June 28, 1965.

15. Town of Westwood Board of Appeals notice of Special Permit, dated June 28, 1965.

16. Complaint in Condemnation (December 3, 2003).

17. Declaration of Taking (December 3, 2003).

18. Aerial Photos of Subject Property.

19. Town of Westwood Assessor's Field Card re Parcel 37-019.

20. Plan of Railroad Tracks and Sidings at Subject Property, prepared by Daylor Consulting Group, Inc., dated November 23, 2004.

### B. The Trustees' Proposed Exhibits

Because the Trustees have not received their final experts' report, they are unable at this time to identify all of the exhibits that may be offered at trial. It is anticipated, however, that the exhibits will include:

1. Plans of the property and the industrial park in which the property is located;

2. Ground and aerial photographs of the property;

3. Zoning By-Laws for the Town of Westwood in effect prior to the 2003 Town Meeting;

4. Amendments to the Town of Westwood Zoning By-Laws adopted at the 2003 Town Meeting;

5. Records of the Town of Westwood in connection with the Town's planning objectives for the industrial park;

6. Photographs and plans of comparable sales upon which the Trustees' expert may rely and form an opinion of value.

The Trustees will supplement this list as soon as the expert report has been received.

## XIV. REMAINING OBJECTIONS TO EVIDENCE IDENTIFIED IN PRETRIAL DISCLOSURE REQUIRED BY FED. R. CIV. P. 26(a)(3)

### A. Amtrak

Pursuant to this Court's February 12, 2004 Notice of Scheduling Conference and Order for Joint Statement and Certifications, Amtrak on May 14, 2004 submitted to counsel for the Trustees its Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a). To date, the Trustees have not yet made similar disclosures to Amtrak, nor have any disclosures been made pursuant to Fed. R. Civ. P. 26(a)(3). Moreover, the Trustees have not yet provided to Amtrak their appraisal of the fair market value of the Subject Property. Due to the current status of this litigation, Amtrak does not at this time have any basis for raising objections to the Trustees' proposed evidence.

### B. The Trustees

Because the Trustees have not received their final expert report, and consequently have not completed and exchange of expert reports with Amtrack, the Trustees cannot state any objections to Amtrack's proposed evidence at this time.

Respectfully submitted,

NATIONAL RAILROAD PASSENGER CORPORATION

By its Attorneys,

/s/ Johanna W. Schneider
Eric W. Wodlinger (BBO #531960)
Johanna W. Schneider (BBO #643744)
Exchange Place
53 State Street
Boston, MA 02109
(617) 248-5000

MORTIMER B. ZUCKERMAN AND
EDWARD H. LINDE, TRUSTEES OF
THE 40-46 HARVARD STREET TRUST,

By their Attorneys,

MASTERMAN, CULBERT & TULLY, LLP

By: /s/ Neal C. Tully (Johanna W. Schneider)
Neal C. Tully (BBO#504280)
One Lewis Wharf
Boston, MA 02110
(617) 227-8010