UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION,<br>Plaintiff,<br><br>v.<br><br>5,103 SQUARE FEET OF LAND, LOCATED AT 40-46 HARVARD STREET, SITUATED IN WESTWOOD, MASSACHUSETTS; MORTIMER B. ZUCKERMAN AND EDWARD H. LINDE, TRUSTEES OF THE 40-46 HARVARD STREET TRUST, OWNERS; AND UNKNOWN OTHERS,<br><br>Defendants. | 03 Civ.12440-DPW |

## HARVARD STREET TRUST'S FINAL PRETRIAL MEMORANDUM

Defendants Mortimer B. Zuckerman and Edward H. Linde, Trustees of the 40-46 Harvard Street Trust (the "Trustees"), submit the following final pretrial memorandum pursuant to the Court's Order of May 31, 2005.

**I.   TRIAL COUNSEL**

   Neal C. Tully
   Kevin T. Smith
   Masterman, Culbert & Tully, LLP
   One Lewis Wharf
   Boston, MA  02110
   (617) 227-8010

**II.   TRIAL TYPE**

   Jury-waived trial.

MCT/151333.1

**III.     CONCISE SUMMARY OF THE EVIDENCE THAT WILL BE OFFERED**

The Trustee's property consists of approximately 9.2 acres of land, improved with a warehouse and office building containing approximately 168,000 square feet of space. Approximately 29,500 square feet is dedicated to office use and the balance is warehouse, light assembly type space, including loading docks and bays. The property was developed as part of an industrial park built largely in the 1950's and 1960's. The building was built in 1967 as a build to suit warehouse and distribution center for a liquor wholesaler. In the early 1990's, the building was upgraded for use by Bank of Boston for its shareholder services division. Additional office space was added, the entire building was air conditioned, a raised floor computer room installed, power to the building was increased, among other improvements.

By the early 1990's, following the real estate recession of the late 1980's through the early 1990's, the industrial park began experiencing significant vacancies as warehouse and distribution tenants moved to more modern facilities along Route 495 and other locations. Many of the buildings, including the subject property, suffered from physical or economic obsolescence for the traditional warehouse and distribution uses. The subject property, for example, has an office to warehouse space ratio that exceeds current requirements, an insufficient number of truck bays, truck bays that can not accommodate many models of tractor-trailers currently in use, and a lower ceiling clearances than modern standards. The Bank of Boston occupied much of the building during the mid-1990's as a printing and print distribution facility for shareholder services, and later Armstrong Laboratories occupied part of the building from January, 1997 to January, 2003 (23,704 square feet) and Output Technologies, Inc. (as purchaser of the Bank's shareholder services) occupied part of the building from October, 1995 to July, 2003 (originally 133,174 square feet and later 128,105 square feet). The building has been vacant since Armstrong and Output Technologies moved out.

The Town of Westwood, which recognizes the industrial park as its commercial and economic base, responded in 1991 to the precipitous drop in property values during the recession, by forming the Economic Development Advisory Committee with a full time Economic Director. The mission of the Committee is to work with owners and occupants of the industrial park on revitalizing and rejuvenating the park. Over the years, the Committee and the Town obtained state grants for infrastructure and roadway improvements and worked with the MBTA to optimize MBTA investment and mitigation in connection with improvements at the commuter rail station. The ultimate goal of the Committee and the Town has been to effect the redevelopment of the park through conversion of the older, traditional warehouse and distribution uses to office, R&D, high tech or computer light manufacturing and assembly, consistent with changes in the economy. By 2002, approximately one-third of the complex had undergone some form of conversion, one-third was still subject to the traditional warehouse or manufacturing uses, and one-third was vacant. Beginning in 2002 or 2003, the Committee began a planning initiative to spur development and conversion of the industrial park. The effort culminated in the adoption of eleven zoning articles at the Spring 2004 Town Meeting to encourage rehabilitation and conversion of the industrial park. Among other changes, the Town increased the permitted height of buildings, increased the permitted density (FAR), eliminated the requirement of special permits for many dimensional restrictions and uses and expanded the uses permitted in the Park.

The Trustees expect to present evidence that the property has been partially converted from its original warehouse and distribution use to the type of mixed office, R&D, light assembly or flex space that is being encouraged by the Town of Westwood and that is consistent

with the trends in the Industrial Park and surrounding area and that such use, either in its present configuration or subject to further conversion, is the highest and best use of the property.

The Trustees expect to present evidence that the existence of a rail storage spur track abutting its property and the storage of rail cars immediately adjacent to their building will diminish the marketability of the property for office, R&D, flex and light assembly related uses and diminish the value of the property as a whole.  The existing tracks are little used and have a negligible impact on the potential uses of the property.  The spur that services the subject property has not been used since the original tenant vacated the property in 1992 and is not likely to be used again.  The spur servicing the property on the opposite side of the tracks has not been used since that building was converted to primarily office use and is unlikely to be used in the future.  The through rail is sparsely used.  A new rail with stored cars will have a significant adverse aesthetic impact on the property and its potential uses, adversely affect the marketability of the property, and diminish the value of the property as a whole.

The Trustees expect the evidence to show that prior to the taking, the property had a fair market value of $9,310,000, and that after the taking, in light of the impact of the rail storage spur, the property had a fair market value of $8,550,000, for total damages of $760,000.

**IV.　FACTS ESTABLISHED BY THE PLEADINGS, ADMISSIONS, OR STIPULATIONS**

The parties agree that the following facts have been established by the pleadings, admissions, or stipulation:

1.　Amtrak is a corporation created under the provisions of the Rail Passenger Service Act, 49 U.S.C. § 24301 et seq., for the purpose of providing intercity rail passenger service.

2. On December 3, 2003, Amtrak filed with the United States District Court for the District of Massachusetts a Declaration of Taking for a permanent railroad easement over 5,103 square feet of land in Westwood, Massachusetts (the "Subject Property") owned by the Trustees (the "Taking").

3. The Trustees owned the Subject Property as part of a larger parcel shown as Lot 59 on Land Court Plan 26294R, also known as Plat 37, Lot 16 on the current tax assessor's map for the Town of Westwood.

4. The permanent railroad easement was taken subject to and with the benefit of all easements, agreements, and restrictions of record.

5. The easement taken by Amtrak reserved to the Trustees rights to (a) construct and use for railroad service to Lot 59 as shown on Land Court Plan 26294R spur tracks connecting with tracks within this railroad easement, subject to the requirements of public authority and to the reasonable regulations of Amtrak and subject to Amtrak's specifications and the approval of Amtrak's chief engineer, which approval shall not unreasonably be withheld; (b) to cross the railroad easement described above where necessary for access between parcels on either side thereof and to streets or ways; (c) to use, construct, repair and replace for such crossings, driveways flush with any tracks, subject to the approval of Amtrak's chief engineer, which approval shall not unreasonably be withheld; and (d) to use, construct, repair and replace utility lines, tunnels and bridges over or under said railroad easement, subject to the approval of Amtrak's chief engineer, which approval shall not unreasonably be withheld.

6. The Subject Property is situated entirely within an industrial zoning district in the Town of Westwood.

7. The Trustees' property consists of an approximately 9.21 acre lot improved with a 169,000 square foot warehouse and office building.

8. The Subject Property is adjacent to at least six loading bay openings with steel doors in the warehouse's easterly side.

9. The Subject Property is adjacent to an existing railroad right-of-way held by Amtrak as well as a lead track to the MBTA's mainline.

10. Prior to the Taking, the Subject Property was undevelopable land as a discrete parcel.

11. The Taking was necessary to support Amtrak's provision of intercity rail passenger transportation service between New York and Boston.

12. As compensation for the Taking, Amtrak deposited $51,000 with the Court.

13. The Taking has not interfered with rail service on the spur track serving the 40 Harvard Street building owned by the Trustees.

## V. CONTESTED ISSUES OF FACT

The Trustees expect that the sole contested issue in this matter will be the damages incurred by the Trustees as a result of the taking made by Amtrack, i.e., whether and to what extent the taking and the project for which the taking was made diminished the value of the Trustees' property as a whole.

## VI. JURISDICTIONAL QUESTIONS
None.

## VII. QUESTIONS RAISED BY PENDING MOTIONS
There are no motions currently pending in this matter.

## VIII. ISSUES OF LAW
None.

**IX.   REQUESTED AMENDMENTS TO THE PLEADINGS**

None.

**X.   ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION**

The Trustees request a view of the property and the surrounding area.

**XI.   PROBABLE LENGTH OF TRIAL**

The parties estimate a five (5) day trial.

**XII.   WITNESSES TO BE CALLED**

>   Michael Cantalupa
>   Senior Property Manager – Development
>   Boston Properties
>   111 Huntington Avenue
>   Boston, MA 02199-7610
>   (617) 2366-3300

Mr. Cantalupa is principally a fact witness and a representative of the owner in connection with a description, history and use of the property, efforts to market the property, and plans for the future use of the property. Mr. Cantalupa is, in addition, expected to testify as to his opinion, based on his real estate experience, on the effect of the rail storage spur on the use and marketability of the property.

>   Mr. Steven Clancy
>   CB Richard Ellis-Whittier Partners
>   111 Huntington Avenue
>   Boston, MA 02199
>   (617) 867-2340

Mr. Clancy is principally a fact witness in connection with market conditions at the time of the taking, marketing efforts with respect to the property, and the impact of the taking and the storage rail on the marketability and use of the property.

>   Mr. Michael Jaillet, Town Manager
>   Ms. Joyce Moss, Economic Development Offices
>   Town of Westwood
>   Town Hall
>   580 High Street
>   Westwood, MA 02090
>   (781) 326-6450

The Trustees anticipate calling either Mr. Jaillet or Ms. Moss in connection with the policies, planning initiatives and goals of the Town of Westwood, efforts undertaken to rehabilitate and revitalize the industrial park, to change the climate and desireability of the park, including recent zoning changes in the Town of Westwood.

>Mr. Webster Collins, MAI
>CB Richard Ellis-Whittier Partners
>10 High Street, Suite 1120
>Boston MA 02110
>(617) 912-7025

Mr. Collins is a certified general appraiser in the Commonwealth of Massachusetts with extensive appraisal experience.  He holds an MAI designation.  Mr. Collins is expected to testify as an expert with respect to his opinion of the highest and best use of the property before and after the taking and with respect to the damages incurred as a result of the taking and the project for which the taking was made, and the basis for his opinions.

**XIII.  PROPOSED EXHIBITS**

The Trustees expect to offer the following exhibits:

1. Aerial photographs of the property and surrounding area

2. Ground photographs of the property and surrounding area

3. Registered plan of the property

4. Plan of the easement taken

5. Plan of the Westwood Industrial Park

6. Appraisal report of Webster Collins

7. 2003-2005 Asset Summary Sheets

8. CBRE Lease promotional files (undated)

9. CBRE Sale promotional brochure dated March 18, 2005

10. Summary of Industrial Sales Chart

11. Comparable Sale Location map or plan

12. Excerpt from the Westwood Comprehensive Plan dated February 4, 2000

13. Town of Westwood Zoning By-Law as of May 5, 2003

14. Town of Westwood Zoning Map as of May 5, 2003

15. Town of Westwood Zoning By-Law as of May 10, 2004

16. Town of Westwood Zoning Map as of May 10, 2004

17. Business Advisory Board Summary of proposed zoning changes

18. Chart of zoning changes adopted in May, 2004

19. 40-46 Harvard Street Property Summary Sheet

20. CBRE Market Update, dated January 7, 2004

21. Instron Lease Proposal, with exhibits

22. Parking expansion plan and cost estimate

The parties anticipate filing a unified exhibit list in the format required under the Order of May 31, 2005 at or prior to the final pre-trial conference.

## XIV. REMAINING OBJECTIONS TO EVIDENCE IDENTIFIED IN PRETRIAL DISCLOSURE REQUIRED BY FED. R. CIV. P. 26(a)(3)

None.

Respectfully submitted,

MORTIMER B. ZUCKERMAN AND EDWARD H. LINDE, TRUSTEES OF THE 40-46 HARVARD STREET TRUST,

By their Attorneys,

MASTERMAN, CULBERT & TULLY, LLP

By: /s/ Neal C. Tully
Neal C. Tully (BBO#504280)
One Lewis Wharf
Boston, MA 02110
(617) 227-8010

Dated: July 8, 2005